JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **FORREST GRAYBILL, III,**<br><br>Plaintiff,<br><br>v.<br><br>**VIGEN KHUDAVERDIAN dba V&M Towing & Repair, et al.,**<br><br>Defendants. | Case No.: SACV 15-01627-CJC(JCGx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

## I. INTRODUCTION

Forrest Graybill, III ("Plaintiff") brings this action against Vigen Khudaverdian d/b/a V&M Towing & Repair, Infinity Insurance Company ("Infinity"), and Insurance Auto Auction ("IAA"; together with Infinity, "Defendants") for negligence, breach of

-1-

contract, breach of the covenant of good faith and fair dealing, conversion, trespass to chattel, and violations of § 17200 of the California Business and Professions Code.[1] Plaintiff's claims arise from the theft and subsequent return of his Hummer vehicle. Plaintiff alleges that after his Hummer was stolen, V&M, Infinity, and IAA unlawfully held possession of it for approximately a year and a half before finally releasing it back to him. He originally filed this action in Orange County Superior Court on April 8, 2015, but Defendant IAA removed it to this Court on October 9. (Dkt. 1 ["Notice of Removal"].) Before the Court is Plaintiff's motion for remand. For the following reasons, the motion is GRANTED and the case is REMANDED to Orange County Superior Court.[2]

## II. BACKGROUND

Plaintiff is the owner of a 2006 Hummer H2 which was stolen on December 29, 2013. (Notice of Removal, Exh. A ["Compl."] ¶¶ 11; 14.) Plaintiff filed a stolen vehicle report with the Orange County Sheriff's Department, and the Santa Ana Police Department recovered the Hummer that same day, notifying Plaintiff by letter in January 2014. (*Id.* ¶¶ 14–15.) Plaintiff's insurance company, Infinity, requested that the Hummer be towed by V&M Towing and Repair to a lot owned by IAA. (*Id.* ¶ 16.) Subsequently, Infinity contacted Plaintiff and told him that it would release the vehicle to him if he completed the requisite paperwork. (*Id.* ¶ 17.) Plaintiff alleges that he did not understand some of the requests in the paperwork from Infinity and reached out to

---

[1] V&M Towing & Repair was dismissed from this action on June 24, 2015. (Dkt. 1 Exh. H.)

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for November 23, 2015 at 1:30 p.m. is hereby vacated and off calendar.

Infinity representatives on a number of occasions in July and September 2014 to receive clarification, but that he had to leave messages. (*Id.* ¶ 18.)

In July 2014, Plaintiff learned that his ex-wife received a Notice of Lien Sale from V&M Towing and Repair. (Compl. ¶ 20.) V&M was apparently trying to collect on towing and service fees it incurred when it towed the vehicle. It eventually filed small claims lawsuits against Plaintiff and his ex-wife related to the towing and service charges. (*Id.* ¶¶ 24–25.)

In April 2015, Plaintiff filed his Complaint in state court against V&M, IAA, and Infinity, alleging a variety of claims arising from the loss of his Hummer. (*See generally* Compl.) Plaintiff specifically sought to recover $28,397.00 for the value of the Hummer, which he still had not regained possession of, and at least $42,000 for loss of use of the Hummer, in addition to attorneys' fees, punitive and exemplary damages, and declaratory relief. (*Id.*) Sometime after the Complaint was filed, V&M released Plaintiff's Hummer to him, and Plaintiff dismissed V&M from the lawsuit on June 24, 2015. (Notice of Removal Exh. H.) Plaintiff, IAA, and Infinity then began to engage in motion practice in state court.

On October 1, 2015, Plaintiff's counsel sent Defendants' counsel an email explaining that in an earlier demand letter, he had miscalculated the number of days that Plaintiff had gone without his Hummer. Initially Plaintiff's counsel had determined that the correct figure was 170 days, and multiplying 170 by $192.49 (apparently a reasonable estimate of the daily rental value of a Hummer) had arrived at a figure of $32,723.30, which was somehow changed (the email does not say how) into the $42,000 loss of use figure in the Complaint. (Dkt. 20-1 ["October 1 Email"] at 1.) Plaintiff's counsel alleged that Plaintiff was actually deprived of the use of his Hummer for 538 days. (*Id.*) Plaintiff's counsel then multiplied 538 by the same $192.49 figure to arrive at a new loss

of use demand for $103,559.62.  (*Id.*)  Rather than amend the Complaint or issue a new formal demand letter, however, Plaintiff's counsel told Defendants that he would "wait for [their] response to the current demand before we discuss any revisions" that would be merited by the recalculation.  (*Id.*)

Understanding that Plaintiff was now claiming well in excess of the $75,000 necessary to provide for diversity jurisdiction in a federal court, Defendants promptly removed to this Court, alleging complete diversity between the parties and that the October 1 Email demonstrated the amount in controversy to exceed $75,000.  Plaintiff has moved to remand, arguing alternatively that the email is not admissible for the purpose of determining the amount in controversy, that even if it is admissible, it does not show that the amount-in-controversy requirement has been satisfied, that the parties are not completely diverse, and that Defendants' notice of removal was procedurally improper.  (*See generally* Dkt. 7 ["Pl.'s Mot."].)

## III.  ANALYSIS

### 1.  Legal Standard

A civil action brought in a state court, but over which a federal court may exercise original jurisdiction, may be removed by the defendant to a federal district court.  28 U.S.C. § 1441(a).  "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally."  *Sullivan v. First Affiliated Sec., Inc.,* 813 F.2d 1368, 1371 (9th Cir.1987); *Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc.,* 631 F.3d 1133, 1135 n.1 (9th Cir.2011) ("[A] federal court must have both removal and subject matter jurisdiction to hear a case removed from state court.").  The burden of establishing subject matter jurisdiction falls on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction.  *Gaus v. Miles, Inc.,* 980

F.2d 564, 566 (9th Cir.1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). A federal court can assert subject matter jurisdiction over cases that (1) involve questions arising under federal law or (2) are between diverse parties and involve an amount in controversy that exceeds $75,000. 28 U.S.C. §§ 1331, 1332. If it appears that the federal court lacks subject matter jurisdiction at any time prior to the entry of final judgment, the federal court must remand the action to state court. 28 U.S.C. § 1447(c).

The parties dispute what standard Defendants must meet to show that the amount-in-controversy requirement is met. Plaintiff argues that Defendants must show to a "legal certainty" that the amount in controversy exceeds $75,000. Defendants respond that their burden is only to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional limit. The state of Ninth Circuit law on this point is currently unclear. The Ninth Circuit held in *Gaus v. Miles*, 980 F. 2d 564 (9th Cir. 1992), that when it is "*unclear* what amount of damages the plaintiff has sought," the defendant bears the burden of demonstrating by a preponderance of the evidence that the amount-in-controversy requirement is met. *Id.* at 566–67 (emphasis in original). But subsequent to *Gaus*, the Ninth Circuit held that in the Class Action Fairness Act ("CAFA") context, when a plaintiff *affirmatively pleads* less than the jurisdictional minimum, a removing defendant must show "to a legal certainty" that the amount-in-controversy requirement has been met. *Lowdermilk v. U.S. Bank Nat. Ass'n*, 479 F.3d 994, 1005 (9th Cir. 2007). But *Lowdermilk* did not require the Ninth Circuit to address whether the "legal certainty" standard would apply to a defendant's removal efforts in a non-CAFA case when a plaintiff affirmatively alleged an amount in controversy less than the jurisdictional minimum, and the Ninth Circuit subsequently refused to reach that question. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 n.3 (9th Cir. 2007) (leaving "for another day and another court" the question of whether *Lowdermilk* applies

only in the CAFA context or whether it would also apply to single plaintiffs who allege a certain amount of damages below the jurisdictional minimum).

Complicating matters, the Ninth Circuit recently recognized that *Lowdermilk* was overruled by the Supreme Court's decision in *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013), and reverted to applying the "preponderance of the evidence" standard to defendants seeking removal in CAFA cases even when plaintiffs affirmatively alleged an amount in controversy below the jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  But because *Lowdermilk* did not explicitly hold that the "legal certainty" standard applies to non-CAFA cases, the *Rodriguez* court held only that a defendant "seeking removal of a putative class action" must meet the "preponderance of the evidence" standard to remove.  *Rodriguez*, 728 F.3d at 981.  The upshot, as a court in the Eastern District of California has explained, is that "there is no binding Ninth Circuit case law clearly addressing the standard that applies when a plaintiff in a non-CAFA case affirmatively pleads an amount in controversy below the $75,000 jurisdictional threshold for diversity jurisdiction." *Cagle v. C & S Wholesale Grocers, Inc.*, No. 2:13-cv-02134, 2014 WL 651923, at *6 (E.D. Cal. Feb. 19, 2014).  District courts have gone both ways.  *See Cagle*, 2014 WL 651923, at *7 (applying the preponderance of the evidence standard); *but see Stelzer v. Carmax Auto Superstores Cal., LLC*, No. 13-CV-1788, 2013 WL 6795615, at *5 (S.D. Cal. Dec. 20, 2013) (applying the "legal certainty" standard).

Having reviewed the relevant cases, the Court concludes that the best reading of Ninth Circuit law at this time is that the preponderance of the evidence should apply even when a defendant attempts to remove a case where a single plaintiff has affirmatively pled an amount below the jurisdictional minimum under § 1332.  The Ninth Circuit specifically declined to extend *Lowdermilk*'s holding to cases like the one before the Court, and now that *Lowdermilk* has been overruled, it would be strange indeed to say

that its holding lives on in a set of cases it was never formally applied to. As a result, Defendants must show by a preponderance of the evidence that the amount in controversy here exceeds $75,000. This conclusion also has the advantage of being consistent with the text of § 1446, which—after an amendment in 2011—states that "removal of [a civil] action is proper . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B). *See Cagle*, 2014 WL 651923, at *6 (noting that although "[v]ery few district courts within the Ninth Circuit have applied" the amended § 1446 "to motions to remand dealing with the standard for establishing the amount in controversy," the "lack of binding precedent from the Ninth Circuit" and the "clear and authoritative language of § 1446(c)(2) suggest that the correct standard is the preponderance of the evidence").

Defendants offer only one piece of evidence for their assertion that the amount-in-controversy requirement has been met—the October 1 Email. In it, Plaintiff's counsel explains that a demand letter he sent to Defendants was incorrect because it misstated the number of days Plaintiff was without his Hummer. (The Complaint alleged 170 days, but Plaintiff's counsel argued that the correct number was 538 days.)

**2. Admissibility**

Plaintiff argues that the October 1 Email is not admissible either because it is not an "other paper" under the meaning of 28 U.S.C. § 1446(b) or because settlement offers may not be used to prove the amount of a claim under Federal Rule of Evidence 408.

Section 1446(b) provides that if a "case stated by an initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of . . . an amended pleading, motion, order or other paper from which it may first be

ascertained that the case is one which is or has become removable." Plaintiff argues that the October 1 Email is not an "other paper" because it "was not a demand for settlement." (Pl.'s Mot. at 5.) As an initial matter, this argument is unpersuasive because the October 1 Email was titled "Privileged Settlement Communication . . . /Demand for Settlement Information." (October 1 Email at 1.) Second, Plaintiff's counsel explicitly wrote that the email was being sent "[i]n relation to the demand for settlement." But even if the Court were willing to split hairs and describe the email as a "settlement communication" but *not*, somehow, a settlement demand, it would still conclude that it qualified as an "other paper" under § 1446(b). *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.")

Plaintiff's other argument on admissibility—that the settlement letter is inadmissible as a matter of evidentiary law—is also unavailing. The Ninth Circuit has clearly "reject[ed] the argument that Fed. R. Evid. 408 prohibits the use of settlement offers in determining the amount in controversy." *Cohn*, 281 F.3d at 837 n.3. The *Cohn* Court explained that in the removal context, settlement letters are not offered to show the amount of a defendant's liability—a prohibited use under Fed. R. Evid. 408—but are instead used to show a plaintiff's "assessment of the value" of his claim—a permissible use. *Id.* As a result, the October 1 Email is admissible to prove the amount in controversy.

### 3. Amount in Controversy

The remaining issue for the Court to determine is whether Defendants have met their burden to demonstrate by the preponderance of the evidence that the amount in controversy requirement for diversity jurisdiction has been met. The Court concludes that they have not.

Defendants argue that by removing to federal court based on the October 1 Email, they are simply taking Plaintiff at his word that he believes he is owed more than $100,000. Plaintiff responds by arguing that the October 1 Email was an unrealistic settlement demand, not an honest appraisal of the value of Plaintiff's claim, and that Plaintiff's Complaint—which alleges approximately $42,000 in loss of use damages—should control the question whether the amount in controversy requirement has been met.

Defendants rely chiefly on *Cohn v. Petsmart* for their position. There, a plaintiff in a trademark case then in state court, Cohn, sent a settlement letter to the defendants asking for $100,000 to settle his claim. Defendants promptly removed, and Cohn moved to remand. The district court denied the motion for remand, and the Ninth Circuit affirmed. The Ninth Circuit held that the settlement letter was admissible and relevant and that it seemed to represent Cohn's assessment of the value of his claim. The Court noted that while Cohn "could have argued that the demand was inflated and not an honest assessment of damages . . . he made no attempt to disavow his letter or offer contrary evidence." *Cohn*, 281 F.3d at 840. Because Cohn stuck to his guns and "consistently maintained that [his claim was] worth more than $100,000," the Court reasoned, the defendant had properly shown that the amount in controversy exceeded the jurisdictional minimum. *Id.*

This situation here is quite different from *Cohn*. Plaintiff's counsel acknowledged an error in his initial calculation and then informed Defendants of a new calculation, but explicitly said that he would "wait for [Defendant's] response to the current demand before we discuss any revisions"—an implicit acknowledgment that Plaintiff may not have actually believed that he was due more than $100,000. (October 1 Email at 1.) Additionally, once Defendants removed, Plaintiff—unlike the plaintiff in *Cohn*—immediately disavowed the demand as a sort of pie-in-the-sky settlement wish and not a

serious evaluation of the value of his claim. (Indeed, the Court is skeptical that Plaintiff would seriously value eighteen months' worth of lost use of a $28,000 vehicle at more than $100,000.) *Cohn*, as the Court reads it, stands for the proposition that a plaintiff's disavowal of a settlement demand or argument that such a demand was inflated is relevant to the determination of whether a demand is a credible estimate of an amount in controversy. Seeing as Plaintiff has disavowed the settlement letter and affirmed his claim of $42,000 in lost use damages, the Court concludes that it is more likely than not that the actual amount in controversy here is less than $75,000.[3] Defendants have therefore failed to meet their burden to show that the requirements for removal under the diversity jurisdiction statute have been met, and the Court lacks subject-matter jurisdiction over this action.[4]

//
//
//
//
//
//
//
//

---

[3] Defendants argue in the alternative that the fact that Plaintiff seeks punitive and exemplary damages, in addition to attorneys' fees, drives the amount in controversy above $75,000. The problem with this argument is that Defendants knew in June that Plaintiff was claiming $42,000 plus punitives, exemplaries, and attorneys' fees, but it chose not to remove. Since the Court has determined that the settlement letter does not change the $42,000 into $103,559.62 for the purposes of calculating the amount in controversy, Defendants cannot now fall back on an argument they should have made in June regarding whether Plaintiff's remaining claims sum to more than $75,000. Defendants are barred from making that argument by § 1446's requirement that a defendant file a notice of removal within 30 days of receiving notice of the grounds for removal. 28 U.S.C. § 1446(b)(1).

[4] Because the Court is remanding on the amount-in-controversy question, it need not reach Plaintiff's other arguments as to why diversity jurisdiction is improper (for example, regarding Defendants' citizenship and the question whether Infinity timely joined in the removal).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED, and the case is REMANDED to Orange County Superior Court.

DATED: November 17, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE